*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES
_____

## UNITED STATES
Appellee

**v.**

## Kristopher D. COLE, Airman First Class
United States Air Force, Appellant

**No. 23-0162**
Crim. App. No. 40189

Argued December 6, 2023—Decided June 6, 2024

Military Judges: Brett A. Landry (arraignment and motions) and Mark W. Milam (trial)

For Appellant: *Captain Samantha P. Golseth* (argued); *Major Abhishek S. Kambli* (on brief); Megan P. Marinos, Esq.

For Appellee: *Captain Jocelyn Q. Wright* (argued); *Colonel Matthew D. Talcott*, *Lieutenant Colonel James P. Ferrell*, and *Mary Ellen Payne*, Esq. (on brief).

Judge JOHNSON delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, Judge MAGGS, and Judge HARDY joined.

_____

Judge JOHNSON delivered the opinion of the Court.

Appellant, Airman First Class (A1C) Kristopher D. Cole, appealed the decision of the United States Air Force Court of Criminal Appeals (AFCCA) upholding his sentence for offenses that he pled guilty to, which included Specification 2 of Charge II for simple assault with an unloaded firearm in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928 (2018). Despite finding that the military judge erred in relation to Specification 2 of Charge II during the providence inquiry by "indicating that Appellant was charged with the offense of assault consummated by a battery and in advising and conducting a colloquy on matters that were not part of the charged offense," *United States v. Cole*, No. ACM 40189, 2023 CCA LEXIS 118, at \*53-54, 2023 WL 2365322, at \*18 (A.F. Ct. Crim. App. Mar. 6, 2023) (unpublished), the AFCCA concluded that "such errors did not substantially influence Appellant's adjudged sentence," *id.* at \*58, 2023 WL 2365322, at \*19. The AFCCA affirmed Appellant's sentence. *Id.* at \*58, 2023 WL 2365322, at \*20. We disagree and reverse the decision of the AFCCA as to the sentence.

In June of 2021, Appellant was convicted, in accordance with his pleas, of one specification each of assault via strangulation on divers occasions (Specification 1 of Charge II), simple assault with an unloaded firearm (Specification 2 of Charge II), and assault consummated by a battery (Specification 7 of Charge II), in violation of Article 128, UCMJ.[1] He was sentenced to a reduction to the grade of E-1, a reprimand, a total of fourteen months of confinement,[2] and a

---

[1] In accordance with Appellant's plea agreement, the convening authority withdrew and dismissed two specifications of sexual assault and four additional specifications of assault, in violation of Articles 120 and 128, UCMJ, 10 U.S.C. §§ 920, 928 (2018).

[2] The plea agreement provided that Appellant would be sentenced to a minimum of sixty days and a maximum of six months of confinement for each of the three specifications, to be served consecutively. The adjudged confinement sentence consisted of six months for Specification 1 of Charge II, six months for

bad-conduct discharge. The convening authority took no action on the findings, disapproved the reprimand, and otherwise approved the sentence as adjudged. The AFCCA affirmed the findings and sentence. *Cole*, 2023 CCA LEXIS 118, at *58, 2023 WL 2365322, at *20.

We granted review to determine:

> Whether Appellant is entitled to relief because the military judge misapprehended the offense in Specification 2 of Charge II for which he sentenced Appellant.

*United States v. Cole*, 83 M.J. 393, 393 (C.A.A.F. 2023) (order granting review).

For the reasons set forth below, we hold that the military judge improperly identified Specification 2 of Charge II as an assault consummated by battery and his erroneous view of the elements of the offense alleged in Specification 2 of Charge II makes it unclear whether he sentenced Appellant for aggravated assault with a dangerous weapon or simple assault with an unloaded firearm, thereby materially prejudicing Appellant's substantial right to be sentenced for the correct offense based on a consideration of the nature, circumstances, and seriousness of the offense. Accordingly, we answer the granted issue in the affirmative and reverse the decision of the AFCCA as to the sentence.

## I. Background

A1C RL[3] and Appellant met each other around July 2019 while they were both assigned to Davis-Monthan Air Force Base in Arizona. From around August 2019 to January 2020, they spent time together at Appellant's

---

Specification 2 of Charge II, and two months for Specification 7 of Charge 2, to be served consecutively.

[3] Although she was a civilian at the time of the court-martial, RL was an A1C at the time the charged conduct occurred, and we refer to her as "A1C RL" in this opinion.

apartment on the weekends, and A1C RL would spend the night on most weekends.

The AFCCA, quoting language from the stipulation of fact that Appellant provided with his offer to plead guilty, described the facts relevant to the offense in question as follows:

> Appellant was a self-described "firearms enthusiast;" RL "was not familiar with firearms." [On or about September 21, 2019, . . .] Appellant "handed [RL] his Kriss Vector rifle to disassemble and reassemble." RL was struggling to reassemble the rifle precisely, said she was tired, and "asked if she could just go to bed." Appellant became angry. He yelled at RL as she sat on the couch where she had been reassembling the rifle. Appellant "walked over to [RL] and held up his 9mm Smith and Wesson pistol [] to her temple." "He yelled, '[D]on't disrespect me in my own house, you are going to do this. My house, my rules, you are going to finish it, that's what I told you to do!' [RL] was terrified." Unbeknownst to RL, Appellant had pulled the firing pin out of the pistol. Appellant later told one of his roommates "that he pulled the trigger when he held the pistol to [RL's] temple." Appellant told another person that "he did it to 'put pressure on [RL] and to make her go faster.'" When [a different person] confronted Appellant about whether he really held up a pistol to RL's temple, Appellant "said he did, and said it was funny."

*Cole*, 2023 CCA LEXIS at *6-7, 2023 WL 2365322, at *3 (second through eighth alterations in original).

Relevant to this appeal, Appellant was charged with simple assault with an unloaded firearm in violation of Article 128, UCMJ. Specification 2 of Charge II alleged: "In that [Appellant] . . . did within the state of Arizona, between on or about 1 September 2019 and on or about 28 September 2019, assault [A1C RL] by pointing an unloaded firearm at her head."

Appellant offered to plead guilty to Specification 2 of Charge II in exchange for a sentence between sixty days

and six months of confinement, to be served consecutively with any confinement for the two additional specifications to which he offered to plead guilty, and the convening authority's agreement to withdraw and dismiss the remaining charges and specifications. Trial defense counsel certified that they had advised Appellant of the elements of the offenses to which he was pleading guilty. Appellant acknowledged that he had been advised of the nature of the charges against him and was in fact guilty of the offenses to which he was offering to plead guilty. The day after the convening authority accepted Appellant's offer to plead guilty, the parties stipulated that "[o]n or about 21 September 2019, [Appellant] pointed an unloaded firearm at A1C [RL's] head, touching her temple. He had no legal justification or excuse for doing so. He did so with force and violence. A1C [RL] did not consent to his action."

## II. Providence Inquiry

The elements of simple assault are:

> (a) That the accused attempted to do or offered to do bodily harm to a certain person;

> (b) That the attempt or offer was done unlawfully; and

> (c) That the attempt or offer was done with force or violence.

*Manual for Courts-Martial, United States* pt. IV, para. 77.b.(1) (2019 ed.) (*MCM*). The maximum sentence for simple assault is "[c]onfinement for 3 months and forfeiture of two-thirds pay per month for 3 months." *MCM* pt. IV, para. 77.d.(1)(a) (2019 ed.). For simple assault with an unloaded firearm, the maximum punishment is "[d]ishonorable discharge, forfeiture of all pay and allowances, and confinement for three years." *MCM* pt. IV, para. 77.d.(1)(b) (2019 ed.).

A military judge conducted a providence inquiry to determine whether to accept Appellant's pleas. During the providence inquiry, the military judge walked through the stipulation of fact with Appellant. Then, the military judge purported to explain the elements of the simple assault

alleged in Specification 2 of Charge II. In doing so, the military judge referred to the offense as an assault consummated by battery, but he instructed on the elements of an aggravated assault with a dangerous weapon.

The elements of aggravated assault with a dangerous weapon are:

> (i) That the accused offered to do bodily harm to a certain person;
>
> (ii) The offer was made with the intent to do bodily harm; and
>
> (iii) That the accused did so with a dangerous weapon.

*MCM* pt. IV, para. 77.b.(4)(a) (2019 ed.). The maximum confinement sentence for an aggravated assault with a dangerous weapon is eight years "[*w*]*hen committed with a loaded firearm,*" *MCM* pt. IV, para. 77.d.(3)(a)(i) (2019 ed.); five years "[*w*]*hen committed upon a child under the age of 16 years, spouse, intimate partner, or an immediate family member,*" *id.* at para. 77.d.(3)(a)(ii); and three years in "[*o*]*ther cases,*" *id.* at para. 77.d.(3)(a)(iii).

The military judge instructed:

> The elements of that offense, which is called assault consummated by battery, are, one, that between on or about 1 August 2019 and on or about 20 January 2020, within the state of Arizona, you did assault Airman First Class R.L. by offering to do bodily harm to her. Two, that you did so by pointing at her with a certain weapon, to wit, an unloaded firearm. Three, that you intended to do bodily harm and four, that the weapon was a dangerous weapon.

The military judge then provided definitions for "assault," "offer to do bodily harm," "bodily harm," "dangerous weapon," and "firearm." With respect to "dangerous weapon," the military judge stated, "A weapon is a dangerous weapon when used in a manner capable of inflicting death or grievous bodily harm. What constitutes a dangerous weapon depends not on the nature of the object itself,

but on its capability, given the manner of its use to inflict grievous bodily harm."[4]

Appellant acknowledged that he understood the elements and definitions, and he admitted they accurately described his conduct. Then, he described in his own words why he was guilty of the offense listed in Specification 2 of Charge II:

> Between on or about 1 September 2019 and on or about 28 September 2019, at my off base residence in Tucson, Arizona, myself, A1C R.L. and others were cleaning guns together. During the night, I pointed a firearm at A1C R.L. This was done unlawfully and I did not have legal purpose to do so. While the firearm was unloaded and had the firing pin removed, which means it could not have been fired, I was wrong, and it was illegal for me to point a firearm at her. It was violent because I believe Ms. R.L. did not want me to point the firearm at her and it would have scared her. A1C R.L. did not consent to me doing this and I apologize for my actions.

The military judge then asked Appellant questions relating to the definitions that he had provided:

> MJ: [W]hat I wanted to ask you was, the unloaded firearm, it was a 9mm Smith and Wesson, I believe in the stipulation of fact, it stated, and I wanted to ask you if you consider that a dangerous weapon under the definitions I have given you?
>
> ACC: Yes, Your Honor.
>
> MJ: Do you believe that you had any legal justification or excuse for pointing the gun at Airman R.L.?
>
> ACC: No, Your Honor.
>
> MJ: Would you agree that pointing the gun at her and stating what you stated was bodily harm under the definition I gave you?

---

[4] This is consistent with the definition of "dangerous weapon" found in *MCM* pt. IV, para. 77.c.(5)(a)(iii) (2019 ed.).

ACC: Yes, Your Honor.

MJ: And my other question is, did you intend to point the gun at her?

ACC: Yes, Your Honor.

. . . .

MJ: All right, thank you. So, my question for trial counsel is, do you believe any further inquiry is required for this specification?

ATC: No, Your Honor.

MJ: Defense?

DC: No, Your Honor.

Prior to accepting Appellant's pleas, the military judge concurred with the parties' calculation that the maximum sentence to confinement permitted under law for all three specifications that Appellant agreed to plead guilty to was six years and six months. The military judge accepted Appellant's pleas and sentenced him, in accordance with the plea agreement, to a total of fourteen months of confinement, including six months of confinement for Specification 2 of Charge II.

### III. The AFCCA's Ruling

On appeal, Appellant raised two assignments of error.[5] *Cole*, 2023 CCA LEXIS at \*2, 2023 WL 2365322, at \*1. After receiving briefs on the assigned errors, the AFCCA specified two issues for additional briefing: "whether Appellant's plea of guilty to Specification 2 of Charge II was improvident because the military judge misadvised Appellant of the nature and elements of the offense" and "whether Appellant is entitled to relief because the military judge misapprehended the offense in Specification 2 of

---

[5] Appellant claimed that (1) trial defense counsel were ineffective and (2) Appellant's guilty plea was improvident because the military judge did not investigate Appellant's traumatic brain injury. *Cole*, 2023 CCA LEXIS at \*2, 2023 WL 2365322, at \*1. The AFCCA concluded that neither of these issues warranted relief. *Id.* at \*3, 2023 WL 2365322, at \*1.

Charge II for which he sentenced Appellant." *Id.* at \*2-3, 2023 WL 2365322, at \*1.

The AFCCA found that the military judge erred "in indicating that Appellant was charged with the offense of assault consummated by a battery and in advising and conducting a colloquy on matters that were not part of the charged offense." *Id.* at \*53-54, 2023 WL 2365322, at \*18. Specifically, the military judge erroneously instructed that Specification 2 of Charge II required proof of Appellant's intent to do bodily harm and that the weapon was a dangerous weapon and provided definitions for these elements. *Id.* at \*51-52, \*52 n.14, 2023 WL 2365322, at \*18, \*18 n.14. Notwithstanding those errors, the AFCCA found that "[t]he stipulated facts plus the providence inquiry established a factual basis for Appellant's plea," and "Appellant ha[d] not met his burden to show a substantial basis to question his plea to Specification 2 of Charge II." *Id.* at \*54, 2023 WL 2365322, at \*18.[6]

With respect to sentencing, the AFCCA found that the errors made by the military judge during the providence inquiry did not substantially influence the adjudged sentence because the record was devoid of evidence "that the military judge considered extra aggravating factors during sentencing" (i.e., the use of a dangerous weapon and an intent to cause bodily harm). *Id.* at \*55, 2023 WL 2365322, at \*19. First, the AFCCA noted that, "[t]he military judge was well aware that the firearm Appellant used was unloaded and therefore could not be used to inflict death or grievous bodily harm on RL." *Id.* at \*55, 2023 WL 2365322, at \*19. Second, trial counsel did not argue the elements applicable only to aggravated assault with a dangerous weapon—that the firearm was a dangerous weapon and

---

[6] The parties do not challenge the AFCCA's ruling that the military judge erred by instructing and questioning Appellant on elements and definitions that apply to aggravated assault with a dangerous weapon but not simple assault with an unloaded weapon. Instead, the granted issue before this Court focuses on the impact of the military judge's errors during the providence inquiry on Appellant's sentence.

that Appellant intended to do bodily harm. *Id.* at *57, 2023 WL 2365322, at *19. Third, "the military judge did not make additional statements that could be inconsistent with a finding of guilty to simple assault with an unloaded firearm." *Id.* at *57, 2023 WL 2365322, at *19. According to the AFCCA, "the military judge agreed with counsel that the maximum period of confinement was six years and six months, well below the maximum period of eight years solely for the offense of aggravated assault."[7] *Id.* at *57, 2023 WL 2365322, at *19. Additionally, although the statement of trial results and the entry of judgment are not "a finding nor part of the sentence," the AFCCA found it "instructive on the issue at hand" that "[t]he statement of trial results and entry of judgment—both signed by the military judge—correctly record the offense code to be reported to the Defense Incident-Based Reporting System (DIBRS) as '128-A1' for simple assault with an unloaded firearm." *Id.* at *58 n.16, at 2023 WL 2365322, at *19 n.16.

In light of these considerations, the AFCCA found that "[t]he military judge did not impose a sentence for an offense more serious than Appellant was charged with committing." *Id.* at *58, at 2023 WL 2365322, at *19. Concluding that the military judge erred but finding no material prejudice to Appellant's substantial rights, the AFCCA affirmed the findings and sentence. *Id.* at *58, at 2023 WL 2365322, at *20.

### IV. Standard of Review

Questions of law arising from a guilty plea are reviewed de novo. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). Issues not raised at trial are reviewed for

---

[7] By citing a maximum confinement penalty of eight years, the AFCCA excluded the two other possible maximum confinement sentences for aggravated assault with a dangerous weapon. *See MCM* pt. IV, para. 77.d.(3)(a) (2019 ed.) (stating that the maximum confinement sentence for aggravated assault with a dangerous weapon is eight years if the dangerous weapon is a loaded firearm; five years if the victim is a child that is less than sixteen years old, intimate partner, or family member; and three years in all other cases).

plain error, so long as they are not waived.[8] *United States v. Day*, 83 M.J. 53, 57 (C.A.A.F. 2022); *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009). "To prevail [on plain error review], Appellant bears the burden of establishing (1) error, (2) that is clear or obvious, and (3) results in material prejudice to a substantial right of the accused." *United States v. Bodoh*, 78 M.J. 231, 236 (C.A.A.F. 2019) (citation omitted).

When a forfeited error is nonconstitutional, the appellant must show that the error results in material prejudice to the substantial rights of the accused. *United States v. Palacios Cueto*, 82 M.J. 323, 334 (C.A.A.F. 2022). In the context of a sentencing error, "the test for prejudice is whether the error substantially influenced the adjudged sentence." *United States v. Edwards*, 82 M.J. 239, 246 (C.A.A.F. 2022) (internal quotation marks omitted) (citation omitted). If the forfeited error is constitutional in nature, then " 'material prejudice' is assessed using the 'harmless beyond a reasonable doubt' standard set out in *Chapman v. California*, 386 U.S. 18 (1967)." *United States v. Tovarchavez*, 78 M.J. 458, 460 (C.A.A.F. 2019) (citing *United States v. Jones*, 78 M.J. 37, 45 (C.A.A.F. 2018)); *see also United States v. Sweeney*, 70 M.J. 296, 304 (C.A.A.F. 2011); *United States v. Harcrow*, 66 M.J. 154, 160 (C.A.A.F. 2008).[9] For such errors, "the burden [is on] the government to 'show that the error was harmless beyond a reasonable doubt.' " *Hasan*, 84 M.J. at 220 (quoting *Tovarchavez*, 78 M.J. at 462 n.6). In this case, the parties dispute whether

---

[8] The issue before this Court arguably was waived because it was not raised at trial and Appellant's plea agreement contained a provision waiving all waivable motions. However, the AFCCA specified the issue for review and neither party contends to this Court that the issue was waived. Therefore, we treat the issue as forfeited and review for plain error.

[9] This applies to nonstructural constitutional errors. Structural constitutional errors generally warrant automatic reversal. *United States v. Hasan*, 84 M.J. 181, 206 (C.A.A.F. 2024). Neither party contends to this Court that any error in this case is a structural constitutional error.

the military judge erred in a constitutional or nonconstitutional nature. We need not settle that debate because even assuming without deciding that there was nonconstitutional error, we hold that the military judge's misapprehension materially prejudiced Appellant's substantial rights.

**V. Discussion**

In imposing a sentence, military judges are required to consider "the nature and circumstances of the offense." Rule for Courts-Martial (R.C.M.) 1002(f)(1) (2019 ed.). Additionally, they must take into account the need for the sentence to "reflect the seriousness of the offense" and "provide just punishment for the offense." R.C.M. 1002(f)(3)(A)-(C) (2019 ed.). In determining a sentence, the military judge may consider any evidence that the military judge admitted during presentencing and findings. R.C.M. 1002(g) (2019 ed.).

In this case, the military judge erroneously told Appellant that Specification 2 of Charge II was for an assault consummated by battery. Additionally, the military judge erred in telling Appellant that Specification 2 of Charge II required that he "intended to do bodily harm" and used "a dangerous weapon." Finally, the military judge erred in defining these terms and then questioning Appellant about whether he considered the unloaded firearm a "dangerous weapon" and whether he agreed that pointing it at A1C RL's head under the circumstances constituted bodily harm.

These errors reflect the military judge's misapprehension of the nature of the offense to which Appellant agreed to plead guilty to for Specification 2 of Charge II. First, Specification 2 of Charge II was not for an assault consummated by a battery; it was for a simple assault with an unloaded firearm. Second, use of a dangerous weapon is not an element of the offense of simple assault with an unloaded firearm, and even if it was, an unloaded firearm as used in this case is not a dangerous weapon because there is no indication that it was "used in a manner capable of

inflicting death or grievous bodily harm." *MCM* pt. IV, para. 77.c.(5)(a)(iii) (2019 ed.); *see also United States v. Bousman*, No. ACM 40174, 2023 CCA LEXIS 66, at \*29, 2023 WL 1816930, at \*7 (A.F. Ct. Crim. App. Feb. 8, 2023) (unpublished) (finding that an unloaded firearm was not a dangerous weapon because "[t]he evidence does not indicate Appellant used or threatened to use the gun in a manner that would have constituted a dangerous weapon if it was unloaded, for example as a club").[10] It was likewise improper for the military judge to ask Appellant whether pointing the gun at A1C RL did bodily harm to her and implying that Appellant intended to do her bodily harm. Actually causing bodily harm is not an element of a simple assault with an unloaded firearm as charged in this case, and unlike aggravated assault, there is no requirement to show a specific intent to inflict bodily harm. *See MCM* pt. IV, para. 77.c.(2)(b)(ii) (2019 ed.).

Specification 2 of Charge II alleged that Appellant committed a simple assault with an unloaded firearm; Appellant offered to plead guilty to simple assault with an unloaded firearm; and Appellant admitted that he was guilty of a simple assault with an unloaded firearm. However, the military judge advised Appellant that in pleading guilty to Specification 2 of Charge II he was pleading guilty to an assault consummated by battery; provided Appellant with elements and definitions applicable to aggravated assault with a dangerous weapon; and questioned Appellant about the elements of aggravated assault with a dangerous weapon. In doing so, the military judge failed to correctly "inform the accused of, and determine that the accused understands, . . . [t]he nature of the offense to which the plea is offered." R.C.M. 910(c)(1) (2019 ed.). He then sentenced Appellant based on the same misapprehension of the nature and elements of the charged offense—he erroneously believed that Specification 2 of Charge II required proof that Appellant used a dangerous weapon with the intent to

---

[10] Additionally, the Government concedes that the unloaded firearm in this case is not a dangerous weapon.

inflict bodily harm. This error materially prejudiced Appellant's substantial right to be sentenced for the correct offense based on a consideration of the nature, circumstances, and seriousness of the offense. *See* R.C.M. 1002(f) (2019 ed.).

We reject as clearly erroneous the AFCCA's finding[11] that "[t]he record does not indicate that the military judge considered extra aggravating factors during sentencing." *Cole*, 2023 CCA LEXIS 118, at \*55, 2023 WL 2365322, at \*19. According to the AFCCA, the military judge knew that the weapon used by Appellant was not a dangerous weapon because it was unloaded, and thus the military judge knew that it could not inflict death or grievous bodily harm. *Id.* at \*55, 2023 WL 2365322, at \*19. Even though the military judge understood that the firearm was unloaded, his questions to Appellant indicate that he still believed it was a dangerous weapon. Additionally, the military judge improperly advised Appellant that he "must have *intended* to do the bodily harm." (Emphasis added.) Then the military judge elicited Appellant's agreement that his actions met this higher intent standard than what is required for the offer-type simple assault charged in Specification 2 of Charge II.[12] In requiring Appellant to testify that he used a dangerous weapon and intended to do bodily harm, the military judge amplified both the means and the intent beyond what was required for the offense alleged in Specification 2 of Charge II.

---

[11] "We will not overturn findings of fact by a Court of Criminal Appeals unless they are clearly erroneous or unsupported by the record." *United States v. Tollinchi*, 54 M.J. 80, 82 (C.A.A.F. 2000) (citing *United States v. Avery*, 40 M.J. 325, 328 (C.M.A. 1994)).

[12] A simple assault is "[a]n offer-type assault [when there] is an unlawful demonstration of violence, either by an intentional or by a culpably negligent act or omission, which creates in the mind of another a reasonable apprehension of receiving immediate bodily harm. Specific intent to inflict bodily harm is not required." *MCM* pt. IV, para. 77.c.(2)(b)(ii) (2019 ed.).

The military judge's calculation of the maximum permissible sentence to confinement does not demonstrate the military judge properly sentenced Appellant for Specification 2 of Charge II. According to the AFCCA, the calculation of six years and six months for all three of Appellant's guilty plea offenses is "well below the maximum period of eight years solely for the offense of aggravated assault." *Cole*, 2023 CCA LEXIS 118, at \*57, 2023 WL 2365322, at \*19. However, for an aggravated assault with a dangerous weapon, the maximum confinement sentence would only be eight years *if the dangerous weapon was a loaded firearm*. *MCM* pt. IV, para. 77.d.(3)(a)(i) (2019 ed.). The maximum confinement sentence for aggravated assault with a dangerous weapon is five years if the victim is a child that is less than sixteen years old, intimate partner, or family member of the accused, *id.* at para. 77.d.(3)(a)(ii), and is three years in all other cases, *id.* at para. 77.d.(3)(a)(iii). The three years in all other cases is the same as the maximum confinement for a simple assault with an unloaded firearm. *See id.* at para. 77.d.(1)(b).

"Military judges are presumed to know the law and to follow it absent clear evidence to the contrary." *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citation omitted). Here, there is clear evidence from the military judge's errors regarding Specification 2 of Charge II that he did not know the applicable law, and thus any presumption that he knew and followed the law is lost. The record does not reflect how the military judge calculated the maximum confinement sentence for the offenses to which Appellant agreed to plead guilty.[13] In light of his questions indicating he believed the unloaded firearm was nevertheless a dangerous weapon and that there was a requirement for an intent to commit bodily harm, it is

---

[13] The military judge stated, "I did look through the appendix to the Manual for Courts-Martial and I do agree with counsel on the maximum punishment they had already agreed to." Trial counsel and trial defense counsel agreed that the maximum confinement sentence for the offenses that Appellant agreed to plead guilty to was six years and six months.

unclear whether he sentenced Appellant for an aggravated assault with a dangerous weapon or a simple assault with an unloaded firearm.

We are unpersuaded that the military judge reviewing the stipulation of fact demonstrates that the military judge sentenced Appellant appropriately for Specification 2 of Charge II. The heading in the stipulation of fact related to Specification 2 of Charge II states, "Assault with an Unloaded Firearm (Article 128, UCMJ)" but does not specify whether Appellant was pleading guilty to a simple or aggravated assault. Also, although the stipulation of fact indicates that the firearm Appellant used related to Specification 2 of Charge II was unloaded, it does not indicate that the firearm was not a dangerous weapon. Moreover, the fact that the statement of trial results and the entry of judgment reflect the correct offense code for simple assault with an unloaded firearm does not lead us to conclude that the military judge understood the nature and elements of the offense alleged in Specification 2 of Charge II. Based on the military judge's errors during the providence inquiry, we are unable to presume that he knew and followed the applicable law.

Finally, we conclude that there was material prejudice to Appellant's substantial rights even if there was sufficient evidence to support a confinement sentence of six months for Specification 2 of Charge II. The mere possibility that the military judge could have arrived at the same sentence absent the errors he made related to Specification 2 of Charge II does not convince us that he was not swayed by the errors to Appellant's prejudice.[14] In *Kotteakos v. United States*, the Supreme Court stated:

---

[14] "[A]ny amount of actual jail time is significant, and ha[s] exceptionally severe consequences for the incarcerated individual [and] for society which bears the direct and indirect costs of incarceration." *Rosales-Mireles v. United States*, 585 U.S. 129, 139 (2018) (alterations in original) (internal quotation marks omitted) (citations omitted).

> [I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phrase affected by the error. It is rather, even so, whether the error itself had substantial influence.

328 U.S. 750, 765 (1946). In this case, the military judge's erroneous view of the elements of the offense may have led him to sentence Appellant for the offense of aggravated assault with a dangerous weapon, an offense for which Appellant was not found guilty. Based on the military judge mislabeling the offense for Specification 2 of Charge II and his misapprehension of the elements of the offense for Specification 2 of Charge II, it "cannot [be] sa[id], with fair assurance . . . that the judgment was not substantially swayed by the error, [and thus] it is impossible to conclude that substantial rights were not affected." *Id.*

## VI. Conclusion

The decision of the United States Air Force Court of Criminal Appeals is affirmed as to the findings but reversed as to the sentence. The record of trial is returned to the Judge Advocate General of the Air Force for remand to the United States Air Force Court of Criminal Appeals to reassess the sentence or to order a rehearing on the sentence, as appropriate. Thereafter, Article 67, UCMJ, 10 U.S.C. § 867 (2018), shall apply.